UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:09-CR-148 JD |
| | ) | |
| JOHNNY D. PARKER | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Suppress Evidence of Warrantless Search filed by Defendant Johnny D. Parker on June 4, 2010 [DE 19], to which the Government responded on June 18 2010 [DE 23], and Parker replied on June 28, 2010 [DE 25]. For the reasons discussed below, Defendant's Motion to Suppress Evidence of Warrantless Search is DENIED.

### Background

On October 24, 2009, two uniformed Elkhart Police officers were present at the Chicago Bar and Grill on a standby basis while patrons left the bar at closing. On one side of the restaurant's parking lot, which was filled with 150-200 people, Corporal Eric Sommer and Patrolman S.A. Haigh noticed a crowd gathering. Sommer Direct Test.; Haigh Direct Test., Suppress Hr'g, July 20, 2010. Officers heard yelling coming from the crowd, and remarked that Parker "stood out the most because he was jumping around more then everybody else and was yelling the loudest." [DE 20-1]. Officers decided to attempt to speak with Parker to see what the issue was and to prevent a fight from breaking out. Sommer Direct & Cross Test.; Haigh Cross Test. As officers approached the crowd, its members, including Parker, began to disperse. Sommer Direct Test.; Haigh Direct Test. Parker entered a nearby parked vehicle and sat in the front passenger seat. [DE 20-1]. As Sommer came closer to the vehicle in which Parker sat, he

1

could see Parker reaching down in front of himself toward the car floor. Sommer Direct Test. Sommer tapped on the window in an attempt to ask Parker questions. *Id.* Parker began to roll his window down, but then rolled it back up and again reached toward the car's floorboards. *Id.* Sommer then opened the car door and asked Parker to exit the vehicle. *Id.* Parker complied, and Sommer began to conduct a pat frisk for his and Officer Haigh's safety. *Id.* As Sommer conducted the frisk, he saw through the open car door a black automatic handgun lying on the car floor directly where Parker had been reaching. *Id.* Sommer seized the weapon and subsequently arrested Parker. *Id.*

Parker argues that there was no reasonable suspicion to believe that he committed any crime when Sommer approached him and knocked on the car window. [DE 20 at 5]. As a result, contends Parker, he was subjected to an unreasonable search and seizure of his person and vehicle in violation of his rights under the Fourth Amendment to the U.S. Constitution and under Article 1, § 11 of the Indiana Constitution. *Id.* at 6.

An Indictment was filed on November 12, 2009, charging Parker with being a felon in possession of a firearm on or about October 24, 2009, in violation of 18 U.S.C. § 922(g)(1). A hearing on Defendant's motion was held on July 20, 2010, at which Corporal Sommer and Patrolman Haigh testified for the Government.

## Discussion

The Government bears the burden of proving by a preponderance of the evidence the admissibility of evidence—in this case that the Defendant's Fourth Amendment rights were not violated during the incident in question. *United States v. Matlock*, 415 U.S. 164, 177, 177 n.14 (1974) (requiring that the Government bear the burden of demonstrating the admissibility of

evidence resulting from a warrantless search by a preponderance of the evidence); *see also Lego v. Twomey*, 404 U.S. 477, 488-89 (1972).

**I. Officers' Initial Interaction with Parker was a Consensual Encounter**

The first issue before the Court is the determination of when Parker was seized for purposes of the Fourth Amendment. The Fourth Amendment to the U.S. Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. Const. amend IV. "Two categories of seizure implicate the Fourth Amendment: an investigative stop and an arrest." *United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999); *see also United States v. Adebayo*, 985 F.2d 1333, 1337 (7th Cir. 1993); *United States v. Withers*, 972 F.2d 837, 841 (7th Cir. 1992). Short of arresting an individual, police officers may conduct a brief, investigatory stop (a *Terry* stop) in order "to verify suspicions that the person has been, is, or is about to engage in criminal activity." *United States v. Griffin*, 150 F.3d 778, 783 (7th Cir. 1998) (citing *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997)).

"To justify a *Terry* stop, the police officer must have specific and articulable facts taken together with rational inferences to warrant the intrusion." *Griffin*, 150 F.3d at 783 (citing *Terry v. Ohio*, 392 U.S. 1, 21(1968)). When this Court assesses whether a Terry stop was reasonable, the facts are "judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Adebayo*, 985 F.2d at 1339; *see also United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994). This Court considers the totality of the circumstances in making this determination. *Tilmon*, 19 F.3d at 1224.

However, "a seizure does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). A consensual encounter, "which involves no restraint on a subject's liberty and is characterized by non-coercive police questioning of a citizen in a public place[,] . . . is not a seizure within the meaning of the Fourth Amendment and requires no objective justification." *United States v. Robinson*, No. 07-CR-202, 2008 WL 111334, at *3 (E.D. Wis. Jan. 9, 2008) (citing *Bostick*, 501 U.S. at 434 (1991); *United States v. Burton*, 441 F.3d 509, 511 (7th Cir. 2006)). If a reasonable person would "feel free to terminate the encounter," then no seizure has taken place. *United States v. Drayton*, 536 U.S. 194, 201 (2002); *see also Brendlin v. California*, 551 U.S. 249, 261 (2007); *United States v. Hendricks*, 319 F.3d 993, 1000 (7th Cir. 2003). Because such encounters do not implicate the Fourth Amendment, no constitutional justification is required, unless and until the encounter "loses its consensual nature." *Bostick*, 501 U.S. at 434; *see also United States v. Yusuff*, 96 F.3d 982, 985 (7th Cir. 1996). "The question of whether a particular encounter is voluntary is a factual one, dependant on the circumstances of each case." *United States v. Nobles*, 69 F.3d 172, 180 (7th Cir. 1995) (quoting *United States v. Maldonado*, 38 F.3d 936, 939 (7th Cir. 1994)).

Courts have held a wide range of police-citizen interactions to constitute consensual encounters. Courts have found consensual encounters in police requests for identification, *INS v. Delgado*, 466 U.S. 210, 216 (1984); *United States v. Mendenhall*, 446 U.S. 544, 557-58 (1980), questioning at airports for drug interdiction, *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984), and requests to search individuals' luggage. *Florida v. Royer*, 460 U.S. 491, 501 (1983). "[A]s long as police do not convey a message that compliance with their requests is required," such

4

encounters are consensual. *Bostick*, 501 U.S. at 435.

For example, in *Drayton*, 536 U.S. 194, the driver of a passenger bus "allowed three members of the Tallahassee Police Department to board the bus as part of a routine drug and weapons interdiction effort." *Id.* at 197. Officers individually questioned seated passengers, two of whom consented to searches of their persons and bags which revealed bundles of cocaine. *Id.* The Supreme Court determined that the District Court did not err in finding this encounter consensual, since "[t]here was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." *Id.* at 204. The Court concluded that "[i]t is beyond question that had this encounter occurred on the street, it would be constitutional." *Id.*

Moreover, the United States Court of Appeals for the Seventh Circuit has repeatedly held that even when a driver stops his car of his own volition and officers then approach the car, the result is a consensual encounter. *United States v. Clements*, 522 F.3d 790 (7th Cir. 2008); *Hendricks*, 319 F.3d at 999-1000; *United States v. Green*, 111 F.3d 515, 520 n.1 (7th Cir. 1997). Such "[a] consensual encounter becomes a seizure when a reasonable person in those circumstances would not feel free to leave." *Clements*, 522 F.3d at 794 (citing *Brendlin*, 551 U.S. 249). As the Seventh Circuit explained in *United States v. Williams*, 285 Fed. Appx. 284 (7th Cir. 2008), "the key point of *Clements* is that when the police walk up to someone who is either out on the street or sitting in a car that was already stopped (in other words, the police had nothing to do with the driver's decision to pull over and park), there is no seizure at all." *Id.* at 287.

In our case, what little interaction occurred between Parker and Officers Sommer and

5

Haigh before Sommer opened the car door was consensual. Neither officer testified that he intended to arrest Parker when they decided to attempt to speak with him. *See* Sommer Cross Test.; Haigh Cross Test., Suppress Hr'g, July 20, 2010. Instead, both officers sought to see what the problem was, in order to prevent a fight from breaking out at a later time or at a different location. Sommer Direct & Cross Test.; Haigh Direct & Cross Test. Both officers stated that in their experience, it was not unusual for fights temporarily quelled by police presence to move to another location or to "flare up" again once the police leave. Sommer Cross Test.; Haigh Cross Test.

As the officers began walking toward the crowd, the crowd took notice of the officers' presence and began to disperse. Sommer Direct Test. Parker also noticed the approaching officers and began walking toward his car. *Id.* Sommer testified that during the officers' approach, he asked Parker to stop. *Id.* Haigh testified that Sommer did not make any commands to Parker during their approach. Haigh Direct Test. These statements are consistent in that a request to stop is not necessarily a command. Moreover, Parker's reaction is open to no semantic interpretation–both officers testified that Parker continued walking away from the officers, entered his car through the front passenger door, and shut the door. Sommer Direct Test.; Haigh Direct Test. This indicates that even if Parker did hear Sommer's request to speak with him (if any such request was made), the request was made in such a way that a reasonable person would (and Parker evidently did) feel free to ignore the officers and "go about his business." *Brendlin*, 551 U.S. at 261.

Parker continued to ignore officers from inside his car. As Sommer approached the car, he saw Parker reaching down in front of himself, toward the car's floorboards. Sommer Direct

6

Test. Sommer arrived at the car's side and tapped on the window. *Id.* Parker rolled the window down a few inches, and then rolled the window back up again without speaking to Sommer. *Id.* Parker again began reaching down in front of his seat toward the floorboards. *Id.*

Up to this point, neither officer had walked in front of Parker's car, the officers' weapons were holstered, neither officer had touched Parker, and neither officer intended to arrest him. Sommer Direct & Cross Test.; Haigh Direct Test. Even if officers had had an investigatory purpose in seeking Parker out (which they testified that they did not), their subjective intent is not relevant as to whether Parker was seized for purposes of the Fourth Amendment. Instead, the relevant inquiry is whether a reasonable person in Parker's situation would have felt free to leave. Based on the totality of the circumstances, a reasonable person in Parker's situation could not have felt restrained.

The facts of this case differentiate it from *Dowdell v. State*, 747 N.E.2d 564 (Ind. Ct. App. 2001), a case cited by Defendant in his Memorandum of Law in Support of his Motion to Suppress. [DE 20 at 5]. In that case, a police officer called out to the defendant, who was standing on the sidewalk smoking something that looked to the officer like a cigar, to come over to his marked police car. *Dowdell*, 747 N.E.2d at 565. The defendant complied and was subsequently arrested for smoking marijuana. *Id.* at 566. Because the officer lacked reasonable suspicion that the defendant was smoking marijuana, rather than tobacco, the Indiana Court of Appeals held that the officer violated the Fourth Amendment when he seized the defendant by demanding that he come to the police car. *Id.* at 567. Officers Sommer and Haigh, however, did not demand that Parker come to where they stood, and they did not prevent Parker from walking to or entering his car, or obstruct its egress from the parking lot. Instead, they merely walked

7

toward Parker's car and tapped on the window–indisputably a consensual encounter under governing precedent. *See*, *e.g.*, *Drayton*, 536 U.S. at 201; *Bostick*, 501 U.S. at 434; *Hendricks*, 319 F.3d at 1000. The crucial differences between the facts of *Dowdell* and our case diminish the persuasiveness of that authority.

## II. When They Seized Parker, Officers Had a Reasonable Belief That Parker Was Armed, Which Justified Ordering Parker to Exit the Car and Conducting a Frisk of Parker's Person and a Sweep of the Car's Passenger Compartment for Weapons

Police officers may take reasonable steps to protect themselves without running afoul of the Fourth Amendment. In *Terry*, the Supreme Court held that an officer may conduct

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Terry*, 392 U.S. at 27; *see also United States v. Mancillas*, 183 F.3d 682, 695 (7th Cir. 1999). In reviewing an officer's conduct, courts look to "the totality of the circumstances–the whole picture–" while recognizing that "[t]he process does not deal with hard certainties, but with probabilities." *United States v. Cortez*, 449 U.S. 411, 417, 418 (1981).

When an individual who officers suspect to be armed is sitting in a car, officers may remove that individual from the car and conduct both a frisk of the individual's person and a cursory search of the passenger compartment for weapons. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983); *United States v. Arnold*, 388 F.3d 237, 239 (7th Cir. 2004). In *Long*, the Court recognized that the "protection of police and others can justify protective searches when police

8

have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect." *Long*, 463 U.S. at 1049; *see also Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977) (noting the "inordinate risk confronting an officer as he approaches a person seated in an automobile"). Given these dangers, the Court has held that

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

*Long*, 463 U.S. at 1049 (quoting *Terry*, 392 U.S. at 21). This authority applies with equal force whether the suspect is a driver or a passenger. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997).

Although whether reasonable suspicion exists to believe that an individual is armed is necessarily a case-by-case determination, courts have previously held that officers had reasonable suspicion to believe than individuals were armed because those individuals made furtive movements while inside vehicles. In *United States v. Cooks*, 168 Fed. Appx. 93 (7th Cir. 2006), the circuit court upheld a district court determination that a police officer "had reason to believe [that the defendant] was attempting to hide or access drugs or a weapon and, thus, grounds, to pause to investigate." *Id.* at *3. In *United States v. Arnold*, 388 F.3d 237 (7th Cir. 2004), the court held that the driver's "clambering" into the back seat created reasonable suspicion to search the passenger compartment for weapons. *Id.* at 240. And in *United States v. Fryer*, 974 F.2d 813 (7th Cir. 1992), the Court held that "furtive movements" between the driver and passenger during a traffic stop created reasonable suspicion to search the passenger compartment for weapons. *Id.* at 819.

9

In this case, the totality of the circumstances provided Sommer and Haigh reasonable suspicion that Parker was armed before Sommer opened Parker's door. Sommer has nine and a half years of experience with the Elkhart Police Department, and Haigh has a total of five years of experience in law enforcement. Sommer Direct Test.; Haigh Direct Test., Suppress Hr'g, July 20, 2010. The two officers represented the sole police presence in a parking lot filled with 150-200 people. Sommer Direct Test.; Haigh Direct Test. Both officers had previously worked at the Chicago Bar and Grill parking lot after closing, and were aware of a significant potential for violence to erupt. Sommer Direct Test.; Haigh Direct Test. Haigh testified that other officers had previously discovered firearms on individuals in that very lot. Haigh Redirect Test.

As the *Long* and *Mimms* courts noted, a police officer faces a high degree of danger whenever approaching an individual seated in a car. 463 U.S. at 1047; 434 U.S. at 110. The facts of this case indicate that Sommer and Haigh faced an especially high degree of danger on the night in question. Just seconds before approaching Parker, Sommer and Haigh had identified Parker as the loudest and most agitated member of a rowdy crowd. [DE 20-1]. Sommer testified that in his experience, reaching down toward a car's floorboards is an indication that an individual has a weapon. Sommer Direct Test. Both officers observed Parker twice reach toward his car's floorboards as they approached and stood outside Parker's car. Sommer Direct Test.; Haigh Direct Test. Sommer testified that when he saw Parker reach toward the floor, his reaction was to become concerned and to fear that Parker was trying to conceal a weapon near his feet or on the car floor, as other suspects had in Sommer's presence on previous occasions. Sommer Direct Test. Haigh testified that Parker's reaching caused him to become concerned for his and Sommer's safety as well, because the officers did not know what Parker was reaching

10

for. Haigh Direct Test. Given the totality of the circumstances, after Parker reached toward the floor a second time, a reasonable officer in Sommer's or Haigh's position would have reasonably believed that Parker was armed.

Given the reasonableness of his suspicion, Sommer was justified in opening the car door, in ordering Parker to exit the car, and in conducting a pat frisk of his person, and would also have been justified in searching the vehicle's passenger compartment for weapons. As he was conducting the search of Parker's person, Sommer saw a gun on the car's floor, immediately identified it as a weapon, and seized it to ensure his and Officer Haigh's safety. Sommer Direct Test.; Haigh Direct Test. Later events corroborate the reasonableness of the officers' concern for their safety; after handcuffing Parker, the officers testified that tensions were extremely high, and that upset people were around Parker's car. Sommer Direct Test.; Haigh Direct Test. These factors forced them to secure the gun without taking photographs of where it was found or dusting for fingerprints. Sommer Direct Test.; Haigh Direct Test.

## Conclusion

For the reasons discussed, this Court concludes that Parker was only seized within the purview of the Fourth Amendment when Sommer opened the car door, which was after Parker reached for the floorboards of his car the second time. This Court concludes that Corporal Sommer and Patrolman Haigh had a reasonable belief that Parker was armed when they seized him, and this seizure to ensure officer safety was therefore justified. As a result, the Government has met its burden of proving by a preponderance of the evidence that Parker's Fourth Amendment rights were not violated. Accordingly, Defendant's Motion to Suppress Evidence of Warrantless Search is DENIED.

SO ORDERED.

    ENTERED:  July 21, 2010

                                            /s/ JON E. DEGUILIO
                                     Judge
                                     United States District Court